UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CYBER SOLUTIONS INTERNATIONAL, LLC,

        Plaintiff,

                                          File No. 1:13-CV-867

v.

                                    HON. ROBERT HOLMES BELL

PRIVA SECURITY CORPORATION et al.,

        Defendants.

_____/

# O P I N I O N

Plaintiff Cyber Solutions International, LLC ("Cyber Solutions") brought this action against Defendants Pro Marketing Sales, Inc. ("Pro Marketing"), Priva Technologies, Inc. ("Priva"), and Priva Security Corporation. Pro Marketing subsequently filed a counterclaim against Cyber Solutions. On February 26, 2015, this Court awarded judgment in favor of Pro Marketing on the counterclaim. Before the Court is Pro Marketing's motion to enforce the declaratory judgment entered in its favor, pursuant to 28 U.S.C. § 2202.

## I. Background

Priva developed a technology initially known as Secured Key Storage Integrated Circuit ("SKSIC"). The technology provides a unique means of confirming a person's identity when that person is attempting to access data on a microchip. When Priva needed a loan to continue its business, it secured one from Pro Marketing, in exchange for a security interest in essentially all of Priva's property. This Security Agreement prohibited Priva from transferring "any Collateral, any interest therein or any Proceeds thereof . . . without the prior

written consent of [Pro Marketing.]" *See Cyber Solutions Int'l, LLC v. Pro Marketing Sales, Inc.*, 634 F. App'x 557, 566 (6th Cir. 2016).

Priva was unable to maintain a successful business, so it petitioned for bankruptcy. While the bankruptcy proceedings were pending, Cyber Solutions became interested in acquiring the technology and wanted Priva to make improvements to it. With the approval of the bankruptcy court, Cyber Solutions and Priva entered into a license and design agreement ("License Agreement"). In exchange for $400,000, Priva agreed to make improvements to the technology and to assign to Cyber Solutions all of its rights in those improvements. Priva continued to make improvements, and the second generation of the technology became known as "Tamper Reactive Secure Storage" ("TRSS" or the "Technology").

In 2013, Priva's board decided to discontinue operations. Priva turned over its property, including the Technology in its possession, to Pro Marketing pursuant to the Security Agreement. Priva also notified Cyber Solutions that it was terminating the License Agreement. Cyber Solutions filed this action to stop Pro Marketing from disposing of the technology obtained from Priva. Cyber Solutions claimed that it was the rightful owner of the TRSS technology per the terms of the License Agreement. Pro Marketing filed a counterclaim seeking a declaratory judgment that (1) it "lawfully possesses the collateral of Priva" and (2) it is entitled "to market, sell and/or license the SKSIC/TRSS Technology." (Countercl., ECF No. 14.)

After considering a motion for summary judgment filed by Pro Marketing, this Court entered a partial judgment in Pro Marketing's favor on its counterclaim. The Court found that

Pro Marketing's rights under the Security Agreement were superior to Cyber Solutions'
rights under the License Agreement. In other words, whatever modifications to the
Technology that Priva created became part of the collateral subject to the Security
Agreement. Although the License Agreement purported to assign the rights to these
improvements to Cyber Solutions, Priva could not transfer those rights without Pro
Marketing's written approval. Thus, Pro Marketing properly foreclosed on the property in
Priva's possession, including the SKSIC/TRSS technology. Consequently, the Court declared
that Pro Marketing "lawfully possesses Priva's collateral" pursuant to the Security
Agreement and is "permitted to market, sell and/or license the SKSIC/TRSS technology."
(Order & Partial J., ECF No. 49.)

Cyber Solutions appealed that decision. While the appeal was pending, Pro Marketing
filed a motion for a preliminary injunction pending appeal. Pro Marketing claimed that Cyber
Solutions was improperly holding itself out as the owner of the TRSS technology, which was
causing confusion in the marketplace and was preventing Pro Marketing from selling the
technology.  The Court denied the motion. As to the likelihood of success, the Court noted:

> *The declaratory judgment did not affirmatively require Cyber Solutions*
> *Solutions to take any particular action or to refrain from any particular action*
> *with respect to the TRSS.* To the extent Pro Marketing suggests that it requires
> further relief pursuant to 28 U.S.C. § 2202, the Court finds that the request is
> not properly before the Court because Pro Marketing did not request such
> further relief in its motion for summary judgment (ECF No. 29), and because
> the declaratory judgment is currently on appeal.

(10/1/2015 Op. 3, ECF No. 61 (emphasis added).)

The Sixth Circuit affirmed the Court's judgment on January 11, 2016. Five months
later, on May 13, 2016, Pro Marketing filed its motion to enforce the Court's declaratory

judgment. Pro Marketing contends that the TRSS technology is rapidly declining in value, and that it cannot sell or make use of the technology without information or property in the possession of Cyber Solutions. Pro Marketing asserts that Cyber Solutions has several TRSS chips in its possession and may have possession of, or rights to, a "mask work"[1] of the TRSS chips. In addition, Cyber Solutions owns a patent on TRSS technology. Pro Marketing contends that the judgment issued by this Court, as affirmed on appeal, determined that Pro Marketing is the rightful owner of the TRSS technology and that Pro Marketing is entitled to freely exercise its rights of ownership in it.

To that end, Pro Marketing seeks to recover all "TRSS-related" property and technology in Cyber Solutions' possession and to have Cyber Solutions provide an accounting of all TRSS-related property "created by or for" it "during the pendency of this litigation." (Br. in Supp. of Mot. 7, ECF No. 66-1.) Specifically, Pro Marketing's request includes the following: "[a]ll designs, sketches, blueprints, photographs relating to, arising from or depicting, in whole or in part," the Technology "(and updates, improvements and modifications thereto)"; "[a]ll products, prototypes, software and hardware relating to, arising from or embodying" the Technology; "[a]ll marketing, advertising, and promotional materials relating to" the Technology; "[a]ll documents reflecting requests or offers or agreements relating to incorporating" the Technology "into other products or devices"; all "intellectual property associated with" the Technology; all proceeds from the Technology and all documents reflecting the same; and all "personal property related to" the Technology,

---

[1]A mask is a sort of physical blueprint for a microchip. It is used to manufacture the chips.

including "any document, thing or item reasonably needed for Pro Marketing to freely exercise its ownership rights" in the Technology. (*Id.* at 7-9.)

## II. Standard

28 U.S.C. § 2202 provides that "Further necessary and proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

## III. Analysis

Pro Marketing contends that it owns the TRSS technology under "the law of the case doctrine." (Br. in Supp. of Mot. 6, ECF No. 66-1.) "The law of the case doctrine provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'" *Westside Mothers v. Olszewski*, 454 F.3d 532, 538 (6th Cir. 2006) (quoting *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004)). "The trial court is required to 'implement both the letter and spirit' of the appellate court's mandate, 'taking into account the appellate court's opinion and the circumstances it embraces.'" *Id.* (quoting *Brunet v. City of Columbus*, 58 F.3d 251, 254 (6th Cir. 1995)).

In response, Cyber Solutions contends that, at present, it does not have any obligation to turn over property to Pro Marketing, because the property at issue in Pro Marketing's counterclaim is already in the possession of Pro Marketing.

The Court agrees with Cyber Solutions, for two reasons. First and foremost, this Court never considered, let alone adjudicated, whether Pro Marketing could recover property from Cyber Solutions. Both this Court and the Court of Appeals assumed that the property at issue in the counterclaim (i.e., the "TRSS technology") was already in the possession of Pro

Marketing. Second, Pro Marketing's attempt to recover all property "related" to the TRSS technology, including property created by Cyber Solutions, is well beyond the scope of the rights that have been determined in this matter. The opinions by this Court and the Court of Appeals both rest on the assumption that the "TRSS technology" at issue in the counterclaim was created entirely by Priva.

**A. The Court determined rights to property that Pro Marketing obtained from Priva. It did not determine rights to property possessed/controlled by Cyber Solutions.**

Pro Marketing principally relies upon several statements by the Court of Appeals. According to that court, Pro Marketing "asked the district court to declare that Pro Marketing was the rightful owner of both the SKSIC and TRSS technologies and that Pro Marketing was entitled to freely exercise its rights of ownership." *Cyber Solutions*, 634 F. App'x at 561. This statement is merely a paraphrase of Pro Marketing's request for declaratory relief. It is not part of the holding of that court. Indeed, Pro Marketing never asked this Court to declare that it was the "owner" of the SKSIC and TRSS technologies, or that it was entitled to "freely exercise" its rights of ownership. Rather, it sought a declaration that it "lawfully possesses the collateral of Priva" and that it is entitled "to market, sell and/or license the SKSIC/TRSS Technology." (Countercl., ECF No. 14.)

Pro Marketing also relies upon the Court of Appeals' statement that "[t]he dispositive issue is whether the TRSS technology falls within the scope of [Pro Marketing's] lien. If so, then the TRSS technology belongs to Pro Marketing; if not, then the TRSS technology belongs to Cyber Solutions." *Id.* at 562. However, the term "TRSS technology" in this statement refers to technology that was already in the possession of Pro Marketing. *See id.*

6

at 561 (stating that Pro Marketing's foreclosure "resulted in Priva surrendering to Pro Marketing the SKSIC technology, the TRSS technology, and the computers containing Priva's other intellectual property," and that Cyber Solutions sought "an order requiring Priva and/or Pro Marketing to transfer the TRSS technology to Cyber"). Thus, the Court of Appeals did not consider whether Pro Marketing owned property possessed by Cyber Solutions.

Likewise, in this Court's opinion on the motion for summary judgment, the Court summarized Pro Marketing's motion and counterclaim as follows:

> Pro Marketing has requested summary judgment on its counterclaim for a declaration that *it lawfully possesses* the collateral and can sell *it* because it properly *foreclosed* on its security interest in the SKSIC/TRSS technology.

(2/26/2015 Op. 7, ECF No. 48 (emphasis added).) As this passage indicates, this Court assumed that Pro Marketing's counterclaim concerned property that it had already foreclosed upon and already possessed. The Court did not consider whether Pro Marketing is entitled to recover property possessed by Cyber Solutions.

This Court's assumption was supported by Pro Marketing's written submissions to the Court. In its summary judgment brief, Pro Marketing asserted: "I. Pro Marketing . . . lawfully *took possession* of [Priva's] assets"; "II. Pro Marketing['s] . . . foreclosure of the collateral *was* consistent with the bankruptcy court's ruling"; "III. The bankruptcy court's ruling . . . validates *Pro Marketing['s] possession* of the Tamper-Reactive Secure Storage . . . technology."; and "IV. Because Pro Marketing . . . *did not act unlawfully* in . . . *taking possession of the TRSS asset*, Pro Marketing . . . should be permitted to sell the TRSS asset . . . ." (Def.'s Br. in Supp. of Mot. for Summ. J. 1, 3, 5, 6, ECF No. 30 (emphasis

7

added).) In other words, Pro Marketing argued that it was entitled to possess and sell the property that it recovered from Priva. It never asserted that it could recover and sell property possessed by Cyber Solutions.

Similarly, in its reply brief, Pro Marketing argued that "Pro Marketing's rights to the TRSS technology are superior to [Cyber Solutions'] rights" and that it is "permitt[ed] to sell the TRSS technology." (Reply to Summ. J. Mot. 3, ECF No. 46.) Presumably, if Pro Marketing believed that the term "TRSS technology" included property that it did not already possess, it would have argued for more than permission to "sell" this property.

This Court's opinion denying a preliminary injunction pending appeal is consistent with the foregoing. In seeking an injunction, Pro Marketing asserted for the first time that Cyber Solutions was violating the Court's order by "actively marketing, selling and licensing the TRSS technology." (Mot. for Prelim. Injunction 1, ECF No. 56.) The Court denied the motion, stating that the Court's judgment "did not affirmatively require Cyber Solutions to take any particular action or to refrain from any particular action with respect to the TRSS." (10/1/2015 Op. 3, ECF No. 61.)

In short, the Court did not adjudicate Pro Marketing's rights in property possessed by Cyber Solutions. Consequently, the "law of the case" doctrine does not support Pro Marketing's request. While it may the case that Cyber Solutions possesses or controls property which belongs to Priva (and thus, to Pro Marketing), that issue is not properly before the Court. Pro Marketing has not alleged facts or asserted a claim that would entitle it to recovery of property from Cyber Solutions.

**B. The Court did not determine Pro Marketing's rights to property created by Cyber Solutions.**

Moreover, to the extent that Pro Marketing seeks to recover or obtain an accounting of TRSS-related property created by Cyber Solutions, its request is inconsistent with the logic of the opinions by this Court and the Court of Appeals. Pro Marketing apparently believes that it is entitled to any and all modifications to the SKSIC/TRSS technology made by Priva or Cyber Solutions. Pro Marketing notes this Court's statement that "Pro Marketing's security interest in the intellectual property that is the basis of the License Agreement continues and extends to any modifications and enhancements to that intellectual property made after the execution of the Security Agreement, including the TRSS material claimed by [Cyber Solutions]." (2/26/2015 Op. 13-14.) When discussing Pro Marketing's rights in the modifications which would become the TRSS technology, both this Court and the Court of Appeals assumed that these modifications were created entirely by Priva.[2] Pro Marketing was entitled to recover these modifications because whatever Priva created, Priva owned, and whatever Priva owned became part of the collateral subject to foreclosure. *See Cyber Solutions*, 634 F. App'x at 565 ("Upon the completion of any modification to the SKSIC technology, Priva—however briefly—acquired the rights to that modification. Those rights were then . . . included in the Security Agreement's definition of 'Collateral.'").

Pro Marketing now seeks to broaden the scope of the collateral, and hence the scope of the Court's judgment, to TRSS-related property created by Cyber Solutions. But Cyber

---

[2]Pro Marketing benefitted from this assumption, arguing in support of summary judgment that "[Priva] performed all of the 'design services' for the TRSS technology." (Reply 2, ECF No. 46.)

Solutions was not party to the Security Agreement. That agreement does not prohibit Cyber Solutions from making modifications to the Technology, nor does it give Pro Marketing a security interest in modifications created by Cyber Solutions (or, for that matter, by any other non-party to the agreement).[3]

Pro Marketing also relies upon a statement by the bankruptcy court that, in approving the License Agreement, that court expected that Pro Marketing would be able to recover "the SKSIC technology in whole notwithstanding the license" if Pro Marketing were to exercise its rights in the collateral. (*In re Priva*, No. 11-12574, op. at 35 (Bankr. W.D. Mich. June 19, 2012), ECF No. 46-2, PageID.801.) It is not clear whether that statement applies to modifications to the SKSIC technology, or to any technology in the possession of Cyber Solutions, but in any event, it is not part of *this* Court's opinion and judgment, i.e., the judgment that Pro Marketing seeks to enforce. The Court mentioned the foregoing statement in its Opinion only for the purpose of establishing that the License Agreement did not give Cyber Solutions superior rights to the collateral obtained from Priva. Thus, Pro Marketing's reliance is misplaced.

In short, Pro Marketing cannot enforce the Court's judgment by seeking relief that is beyond the scope of the rights adjudicated by that judgment. It may be the case that modifications to the Technology made by Cyber Solutions conflict with the intellectual property rights that Pro Marketing obtained from Priva, but that issue is not before the Court.

---

[3]Pro Marketing suggests that Cyber Solutions should have sought approval from the bankruptcy court to make modifications to the TRSS technology, but it does not explain why.

Pro Marketing has not alleged or claimed that Cyber Solutions has infringed, or is infringing, Pro Marketing's intellectual property rights.

## IV. Conclusion

The dispute between the parties on this motion to enforce judgment largely boils down to a disagreement over the meaning of term "TRSS technology" as used by this Court and by the Court of Appeals. Pro Marketing apparently believes that the term encompasses all TRSS technology and all TRSS-related property. As explained, both this Court and the Court of Appeals were referring to property owned and possessed by Priva and subsequently transferred to Pro Marketing. This is so because Pro Marketing never asserted any rights in property possessed or controlled by Cyber Solutions until after filing its appeal. Consequently, the parties' respective rights in property possessed or controlled by Cyber Solutions have not been determined. For that reason, relief under § 2202 is not warranted.

This conclusion does not necessarily mean that Pro Marketing has no rights in any TRSS technology or intellectual property in Cyber Solutions' control. Rather, it means that Pro Marketing has chosen the wrong vehicle to assert its rights. If Pro Marketing intends to recover property from Cyber Solutions, it must do more than rely upon the declaratory judgment entered in this action. It must allege facts and assert a claim that would entitle it to recovery. Because it has not done so, its request for Cyber Solutions to turn over or to provide an accounting of TRSS-related property is premature.

## V. Status of the Remaining Claims

Cyber Solutions' claims against Pro Marketing are still pending. The amended complaint contains five counts which have not been ruled upon. According to a status report filed by the parties, they agree that, as a result of the order granting summary judgment on Pro Marketing's counterclaim, Counts 1 and 2 of the complaint have been resolved. Counts 3, 4, and 5 of the complaint have not been litigated, but Cyber Solutions has indicated that it will seek to dismiss these claims without prejudice. To date, no motions have been filed to resolve the remaining claims. Accordingly, the Court will require the parties to confer and submit a proposed schedule for disposition of the remaining claims.

The Court will enter an order consistent with this opinion.


Dated: June 28, 2016                            /s/ Robert Holmes Bell
                                                ROBERT HOLMES BELL
                                                UNITED STATES DISTRICT JUDGE